**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| GENE THROWER, individually and on behalf of others similarly situated, | : :  CIVIL ACTION FILE NO. 3:19-cv-00066-CAR |
| Plaintiff, | |
| v. | |
| MATRIX WARRANTY SOLUTIONS, INC. d/b/a ELEMENT PROTECTION, VALIANT AUTO LLC d/b/a AUTOMOTIVE SERVICES CENTER, and MICHAEL KASICK | : **FIRST AMENDED COMPLAINT – CLASS ACTION** : **JURY TRIAL DEMANDED** |
| Defendants. | |

**Preliminary Statement**

1. Plaintiff Gene Thrower ("Plaintiffs") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of automated and prerecorded telephone calls, which, Congress found, were rightly regarded as in invasion of privacy. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. The Plaintiffs allege that Matrix Auto Warranty Solutions, Inc. ("Matrix") commissioned automated and pre-recorded telemarketing calls to Plaintiffs and other putative class members without their consent.

3. Mr. Thrower's pre-recorded calls were made to him pursuant to an arrangement between Matrix and Valiant Auto LLC d/b/a Automotive Services Center ("Automotive Services Center"), a vendor for Matrix, who telemarketed Matrix's services at Matrix's direction, using the call center operated by defendant Michael Kasick.

4. The Plaintiff and putative class members never consented to receive these calls. Because automated dialing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of others who received illegal robocalls from or on behalf of the defendants.

5. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Gene Thrower resides in this District.

7. Defendant Valiant Auto LLC d/b/a Automotive Services Center is a Nevada limited liability company based in Santa Ana, CA 92705. Automotive Services Center facilitates telemarketing calls and signs up customers for Matrix into this District, as it did with Mr. Thrower.

8. Defendant Michael Kasick operates a telemarketing call center based in Colorado used by Automotive Services Center to make pre-recorded telemarketing calls in order to solicit new customers for Matrix Warranty Solutions. Mr. Kasick made calls into this District, as he did with Mr. Thrower.

9. Defendant Matrix Warranty Solutions, Inc. is a corporate entity registered in Nevada, yet maintains its principal place of business at 3100 McKinnon Street, Suite 440, Dallas, Texas 75201. It regularly conducts business in this District, as it attempted to do with the Plaintiffs.

**Jurisdiction & Venue**

10.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11.     The Court has general jurisdiction over the defendants because they engaged in nationwide telemarketing conduct, including into this District.

12.     Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were commissioned into this District.

**TCPA Background**

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

14.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

16.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to Throwers who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

17.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

19.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

20.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

21.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

22.     *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

23.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

24. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited September 3, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

25. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited September, 2019).

## Factual Allegations

26. Matrix Warranty provides extended warranty services to consumers.

27. To generate business through sales, Matrix Warranty relies on telemarketing.

28. However, Matrix Warranty's contact with the potential new customers is limited, and the telemarketing is conducted by third parties.

29. One of Matrix Warranty's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

30. Matrix Warranty also strategies for telemarketing involves the use of pre-recorded messages to solicit business by third parties.

31. Matrix Warranty engages this use of this equipment and the technology of recorded messages because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

32. Through this method, Matrix Warranty shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to The Plaintiff Thrower

33. Plaintiff Thrower is a "Person" as defined by 47 U.S.C. § 153(39).

34. Mr. Thrower's telephone number, (706) 410-XXXX, is registered to a cellular telephone service.

35. Mr. Thrower's cellular telephone has been registered on the National Do Not Call Registry since December of 2018.

36. Mr. Thrower's cellular telephone number is only used for residential purposes.

37. Mr. Thrower was called by Automotive Services Center using Mr. Kasisck's call center on behalf of Matrix on at least two dates: February 22, 2019 and February 27, 2019.

38. The February 22, 2019 call was from Caller ID (706) 521-0302.

39. When Mr. Thrower answered, a pre-recorded message was played.

40. The pre-recorded message advertised warranty services.

41. The purpose of the calls was to sell Matrix's warranty services to Mr. Thrower.

42. In fact, Automotive Services Center contacted Mr. Thrower's counsel at Matrix's request regarding the telemarketing calls.

43. Automotive Services Center called Mr. Thrower's same cellular telephone on February 27, 2019.

44. The February 22, 2019 call was from Caller ID (706) 200-3679.

45. Upon answering the call, Mr. Thrower heard a long pause.

46. Mr. Thrower said hello several times with no response.

47. Mr. Thrower then heard a click and pause noise distinctive of calls made using a type of automatic telephone dialing system ("ATDS").

48. Again, the Plaintiff was offered warranty services.

7

49. These warranty services were intended to promote Matrix products.

50. Mr. Kasick made the calls for Automotive Services Center and dictated control of that program by selecting the equipment that was used and physically dialing or instructing other to physically dial the calls.

51. Plaintiff had not consented to receive Defendants' calls prior to the receipt of these calls.

### Matrix's Liability

52. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

53. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

54. In fact, the Federal Communication Commission has instructed that sellers such as Matrix may not avoid liability by outsourcing telemarketing to third parties such as Automotive Services Center.

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent'

8

marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

55. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

56. Matrix is liable for the calls initiated by Automotive Services Center through its call center operator Michael Kasick.

57. Matrix hired Automotive Services Center to sell its services using telemarketing calls.

58. In fact, Automotive Services Center can bind Matrix in a warranty contract, a hallmark of agency.

59. Matrix knew (or reasonably should have known) that Automotive Services Center was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

60. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

61. In fact, Matrix has been named in multiple lawsuits for the calling conduct of its third-party call centers.

62. Matrix also controls the calling conduct of its third-party call centers by:

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

      a. Limiting the geographic areas to which they can make calls;

      b. Instructing them on the amount of leads they will accept;

      c. Dictating the specific contracts and warranties that they can offer; and

      d. Prohibiting them from calling certain numbers.

63. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

64. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

65. The classes of persons Plaintiff proposes to represent is tentatively defined as:

<u>National Do Not Call Registry Class</u>

All persons in the United States who, from four years prior to the filing of this action: (1) Defendants (or an agent acting on behalf of Defendants) made (2) two or more telemarketing calls (3) promoting Matrix products or services; (4) to a residential phone number that was listed on the National Do Not Call Registry for at least 30 days before the first call; and (5) within any twelve-month period.

<u>Robocall Class</u>

All persons in the United States who, from four years prior to the filing of this action: (1) Defendants (or an agent acting on behalf of Defendants) made (2) one or more telemarketing calls (3) promoting Matrix products or services; (4) using a pre-recorded message or Automatic Telephone Dialing System; (5) to a cellular telephone.

Both are referred to as the "Classes".

66. Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

67. The Classes as defined above are identifiable through phone records and phone number databases.

68. The potential Class members number at least in the thousands. Individual joinder of these plaintiffs is impracticable.

69. Plaintiff Thrower is a member of the Classes.

70. There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

   a. Whether Defendants violated the TCPA by using automated calls to contact putative class members cellular telephones;

   b. Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

   c. Whether the Plaintiffs and the class members are entitled to statutory damages because of Defendants' actions.

71. The Plaintiff's claims are typical of the claims of class members.

72. The Plaintiff is an adequate representative of the Classes because their interests do not conflict with the interests of the Classes, they will fairly and adequately protect the interests of the classes, and counsel skilled and experienced in class actions, including TCPA class actions, represent them.

73. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

74. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

75. The Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### FIRST CAUSE OF ACTION
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.)**
**on behalf of the Robocall Class**

76. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

77. Defendants violated the TCPA by sending, or causing to be sent via an agent, pre-recorded messages to the cellular telephones of Plaintiffs and members of the Robocall Class without their prior express written consent.

78. As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

79. Plaintiffs and Robocall Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, using a pre-recorded voice in the future.

## SECOND CAUSE OF ACTION
**Knowing and/or Willful Violation of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq.)**
**on behalf of Robocall Class**

80. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

81. Defendants violated the TCPA by sending, or causing to be sent via an agent, text messages to the cellular telephones of Plaintiffs and members of the Robocall Class using an automated dialer without their prior express written consent.

82. As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Robocall Class is entitled to treble damages of $1,500 for each violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

83. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, using a pre-recorded voice in the future.

## THIRD CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))**
**on behalf of the National Do Not Call Registry Class**

84. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

85. Defendants violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing text messages within a 12-month period on Defendants' behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

86. As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

87. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

**FOURTH CAUSE OF ACTION**
**Knowing and/or Willful Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))**
**on behalf of the National Do Not Call Registry Class**

88. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

89. Defendants knowingly and/or willingly violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing text messages within a 12-month period on Defendants' behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

90. As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the National Do Not Call Registry Class is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

91. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry or to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future;

B. As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Robocall Class member treble damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

C. As a result of Defendants' statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Robocall Class member $500 in statutory damages for each and every violation of the TCPA;

D. As a result of the Defendants' willful and/or knowing violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the National Do Not Call Registry Class treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

E.   As a result of Defendants' statutory violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the National Do Not Call Registry Class up to $500 in statutory damages for each and every violation of the TCPA;

F.   An award of attorneys' fees and costs to counsel for Plaintiffs and the Class as permitted by law;

G.   An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class;

H.   Such other relief as the Court deems just and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

Dated: September 18, 2019

PLAINTIFF, individually and
on behalf of others similarly situated,

By:

*/s/ Anthony I. Paronich*
Anthony I. Paronich, *Pro Hac Vice*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Andrew W. Heidarpour, *Pro Hac Vice*
aheidarpour@hlfirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Avenue NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

*/s/ Steven H. Koval*
Steven H. Koval
Georgia Bar No. 428905
3575 Piedmont Road
Building 15, Suite 120
Atlanta, GA  30305
Telephone: (404) 513-6651
Facsimile: (404) 549-4654
shkoval@aol.com