**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| GENE THROWER, individually and on behalf of others similarly situated, | |
| Plaintiff, | CIVIL ACTION FILE NO. 3:19-cv-00066-CAR |
| v. | |
| MATRIX WARRANTY SOLUTIONS, INC. d/b/a ELEMENT PROTECTION, VALIANT AUTO LLC d/b/a AUTOMOTIVE SERVICES CENTER, and MICHAEL KASICK | **DEFENDANTS MATRIX WARRANTY SOLUTIONS, INC. AND VALIANT AUTO LLC'S REPLY IN SUPPORT OF THEIR MOTION TO STAY DISCOVERY** |
| Defendants. | |

Defendants Matrix Warranty Solutions, Inc. d/b/a Element Protection ("Matrix") and Valiant Auto LLC d/b/a Automotive Services Center ("Valiant") (collectively "Defendants"), by counsel, submit this Reply in Support of their Motion to Stay Discovery pending the Court's adjudication of Matrix's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 29) and Valiant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (ECF No. 30), (collectively, "Motions to Dismiss").

## I.    INTRODUCTION

This Court should grant Defendants' Motion to Stay Discovery to expedite the resolution of this matter and to avoid burdening Defendants with unnecessary discovery.  The threshold disputes in this matter are whether this Court can exercise personal jurisdiction over Matrix, and whether Plaintiff Gene Thrower's ("Plaintiff" or "Thrower") claims against Valiant even state a claim under Fed. R. Civ. P. 12(b)(6).  Defendants have filed dispositive motions explaining why the answer to both questions is "no."  The issues raised in Defendants' motions are meritorious and should result in Plaintiff's claims being dismissed as to them.  The shortcomings in

Plaintiff's Amended Complaint should be resolved before Defendants are subjected to discovery based on Plaintiff's insufficiently pleaded claims, which include putative class claims for which Plaintiff has already attempted to subject Defendants to extremely onerous, cookie-cutter discovery reaching back four years from the date of the Complaint.  *See* Exhibits 1 & 2 (Plaintiff's First Set of Discovery to Matrix Warranty Solutions, Inc.; Plaintiff's First Set of Discovery to Valiant Auto LLC).  A stay of discovery should cause no unfair prejudice to Plaintiff, who allegedly provided Defendant Kasick with prior express consent to make the calls at issue. Kasick Answer ¶ 37 (ECF No. 28).  The stay will instead promote judicial efficiency by determining whether the scope of this matter may be narrowed if Plaintiff has not stated valid claims against Valiant, and to ensure that Defendant Matrix is not dragged into expensive, burdensome party discovery in a case where it is not even subject to the Court's personal jurisdiction.  Accordingly, Defendants' Motion to Stay should be granted.

## II.    BACKGROUND

Plaintiff's Opposition to Defendants' Motion to Stay overstates the allegations actually contained in his First Amended Complaint.  With regard to Matrix, Plaintiff has stated only broad, conclusory allegations devoid of factual support that Matrix "facilitated" any allegedly unlawful calls to him.  *See* Plaintiff's Opposition to Motion to Stay at 2 (ECF No. 39) (citing Compl. ¶ 7);  *see also* Compl. ¶ 56 ("Matrix is liable for calls initiated by [Valiant] through its call center operator Michael Kasick.").  As highlighted in Matrix's Rule 12(b)(2) Motion and its Reply in Support thereof, Plaintiff's threadbare allegations do not support the exercise of personal jurisdiction over Matrix here.  Matrix is a Texas-based entity that does not operate in this District, and does not make outbound calls to consumers.  *See* Matrix's Reply at 7 (ECF No. 36) (citing Tuerk Decl. ¶¶ 4-6).  Plaintiff's Complaint does not contest that Matrix has not made

any call to him, but instead asserts vague and conclusory statements purporting to show some sort of agency relationship with Kasick to support Matrix's vicarious liability for Kasick's actions. *See* Memorandum in Support of Matrix's Motion to Dismiss at 7 (ECF No. 29-2) (citing Compl. ¶¶ 3, 56-57). These unsubstantiated, conclusory legal allegations, which are directly contradicted by Mr. Tuerk's sworn declaration, must be ignored and cannot support an assertion of jurisdiction over Matrix in this case.

Likewise, Valiant's Rule 12(b)(6) Motion and its Reply in Support point to the fatal flaws in Plaintiff's allegations as to Valiant (and thus also Matrix up the imagined agency chain). Plaintiff has not alleged Valiant made more than a single call to him as required to state a claim under 47 U.S.C. § 227(c)(5). *See* Memorandum in Support of Valiant's Motion to Dismiss at 5 (ECF No. 30-1). Most fatal to Plaintiff's allegations against Valiant, as with his allegations against Matrix, is his reliance on half-baked assertion of vicarious liability for the actions of Defendant Michael Kasick ("Kasick"). Kasick, in his Answer, denies all allegations of any agency relationship or control asserted over him by Matrix or Valiant in making any outgoing telephone calls, to Plaintiff or otherwise. *See* Kasick Answer ¶¶ 37, 43-44, 50 (ECF No. 28). However, even absent Kasick's denial of such a relationship, Plaintiff fails to plausibly state any facts that would show Valiant (or Matrix) exercised substantial control over Kasick or ratified any of Kasick's alleged actions to support a finding of vicarious liability. *See* Valiant's Reply at 3-4 (ECF No. 37) (citing inconsistent and vague allegations purporting to support a showing of vicarious liability in Plaintiff's Complaint).

Plaintiff issued his first discovery requests to Defendants on November 26, 2019. *See* Exhibits 1 & 2. However, due to the insufficiencies in Plaintiff's claims against Defendants, there is substantial likelihood that this Court will grant their Motions to Dismiss and therefore

terminate this litigation as to them.  As a result, it is appropriate to grant Defendants' Motion to Stay to prevent the unnecessary burden of answering discovery prior to the Court's ruling on these dispositive motions.

## III.   ARGUMENT

The Eleventh Circuit has noted that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins."  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997); *see also  Lawrence v. Governor of Ga.*, 721 F. App'x 862, 864-65 (11th Cir. 2018) (ruling the district court did not abuse its discretion by granting a motion to stay discovery when plaintiff's complaint failed to state a claim under Fed. R. Civ. P. 8); *Lopez v. United States*, 656 F. App'x 957, 963 (11th Cir. 2016) ("While discovery may be necessary and appropriate to resolve a factual challenge to the district court's jurisdiction, discovery is not necessary where, as here, the court must resolve a facial challenge to the legal sufficiency of a claim, such as a motion to dismiss under Rule 12(b)(6)."); *Horton v. Reeves*, CV 118-165, 2018 U.S. Dist. LEXIS 208037, at *2 (S.D. Ga. Dec. 10, 2018) ("When balancing the costs and burdens to the parties, the Court concludes discovery should be stayed pending resolution of the motion to dismiss."); *Mid-Continent Cas. Co. v. G.R. Constr. Mgmt.*, Case No. 2:17-cv-55-FtM-38CM, 2017 U.S. Dist. LEXIS 125021, at *6 (M.D. Fla. Aug. 8, 2017) (granting motion to stay because defendant's pending motion to dismiss was clearly meritorious).  While courts in this circuit have clarified that *Chudasama* "does not stand for the proposition that all discovery in every circumstance should be stayed pending a decision on a motion to dismiss," it does support that a likely successful motion to dismiss should be ruled on before unnecessary discovery is undertaken.  *Tillman v. Ally Fin., Inc.*, Case No. 2:16-cv-313-FtM-99CM, 2016 U.S. Dist.

LEXIS 143945, at *4 (M.D. Fla. Oct. 18, 2016) (citing *Koock v. Sugar & Felsenthal, LLP*, No. 8:09-cv-609-T-17EAJ, 2009 U.S. Dist. LEXIS 81153, at *2 (M.D. Fla. Aug. 19, 2009); *In re Winn Dixie Stores, Inc.*, No. 3:04-cv-194-J-33MCR, 2007 U.S. Dist. LEXIS 47014, at *1 (M.D. Fla. June 28, 2007)).  That is the case here, where a review of the merits of Defendants' 12(b)(2) and 12(b)(6) motions will likely result in their dismissal from this matter.

The unnecessary burden of Plaintiff's discovery requests, when weighed against the merits of Defendants' dispositive motions, weighs even more so in favor of a stay when examining how burdensome Plaintiff's requests are.   For example, Plaintiff includes the following in his discovery requests to Matrix and Valiant:

•      "Identify all third parties or sub-vendors used by Valiant Auto LLC in the course of telemarketing."  Pl.'s First Interrogs. to Matrix, Interrog. 3.

•      "How many new customer leads have you provided to Matrix Warranty?"  Pl.'s First Interrogs. to Valiant, Interrog. 11.

•      "Please produce all documents relating to the number of customers or amount of revenue acquired by you from telemarketing."  Pl.'s First Doc. Req. to Matrix, Req. 7; Pl.'s First Doc. Req. to Valiant, Req. 7.

•      "All internal communications at your company regarding Valiant Auto LLC."  ."  Pl.'s First Doc. Req. to Matrix, Req. 17.

•      "Please produce all letters, emails, voicemails, text messages, instant messages, social media messages and other communications between you and any vendor concerning automated and/or telemarketing calls."  Pl.'s First Doc. Req. to Matrix, Req. 20; Pl.'s First Doc. Req. to Valiant, Req. 24.

A review of only these select discovery requests shows that these requests are vague, overly burdensome, and often irrelevant.   The remaining discovery requests served on Matrix and Valiant are similarly burdensome.   This is especially true when considering that these requests apply to a four year period.   It is clear a stay of discovery is warranted when the unnecessary task of having to respond to such requests is weighed against the likelihood the claims against Defendants will be dismissed.

"In deciding whether to stay discovery pending resolution of a motion to dismiss, the Court must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery."  *Scoma Chiropractic, P.A. v. Jackson Hewitt Inc.*, Case No. 2:17-cv-24-FtM-38CM, 2017 U.S. Dist. LEXIS 187066, at *5 (M.D. Fla. Nov. 13, 2017) (citing *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006) (citation omitted).   "To this end, the Court must take a 'preliminary peek' at the merits of the dispositive motion to see if it 'appears to be clearly meritorious and truly case dispositive.'"  *Id.* In that vein, Defendants stand on the meritorious arguments set forth in their Motions to Dismiss, as summarized above.  *See Epps v. Gap, Inc.,* No. CV 17-3424-MWF (PLAx), 2017 U.S. Dist. LEXIS 219772, at *10-11 (C.D. Cal. June 27, 2017) (granting defendant's motion to dismiss due to strength of arguments in support of defendant's motion and noting that motion to stay would have been granted in absence of immediate ruling on motion to dismiss).

Plaintiff attempts to argue in his Opposition that he will be prejudiced by the grant of a stay by what he characterizes as the "potential destruction of evidence."[1]   His support for this

---

[1]   The case cited by Plaintiff in support of the proposition that a delay will cause him to be prejudiced is inapposite.  In *Gordon v. Mortgage Electronic Registration Systems*, while the court did deny a motion to stay discovery, this was in part because it examined the dispositive motions unlikely to succeed, but more importantly, because it found some discovery was necessary to rule on the subject motion to dismiss. *See* Case No. CV410-228, 2010 U.S. Dist.

proposition is that "not all telecommunications companies . . . keep records of telephone activities [for the relevant statutory period] . . . and without an immediate gathering of records, the likelihood of destruction of this evidence increases with each passing day." Opp. at 5-6 (ECF No. 39). As evidenced by the discovery that Plaintiffs served on Defendants shortly after they hung up the phone on their initial Rule 26(f) conference call, Plaintiff is more than capable of serving subpoenas—or notices to preserve—on any third-party telecommunications companies he deems appropriate.[2] Defendants are on notice of this lawsuit, and thus any concerns of destruction of any such records in their possession is misplaced. Plaintiff's claims of hardship or prejudice due to any delay are not persuasive when weighed against the merits of Defendants' Motions to Dismiss. *See McCabe v. Foley*, 233 F.R.D. 683, 687 (M.D. Fla. 2006) (finding plaintiff's claims of prejudice and extreme hardship due to delay in discovery unpersuasive to prevent motion to stay in light of an only temporary delay while potentially dispositive motions are decided).

Further, Plaintiff seems to believe that it is an argument in his favor that "[Matrix] and [Valiant] concede that their motion[s] [sic] won't end this case as Michael Kasick has filed an Answer." Opp. at 5 (ECF No. 39). To the contrary, this instead extinguishes Plaintiff's concerns as to "potential destruction of evidence." As stated in both Kasick's Answer and Valiant's Reply in Support of its Motion to Dismiss, Kasick is the party who dialed the allegedly unlawful calls to Plaintiff, which Kasick alleges he did with Plaintiff's prior express consent. *See* Kasick

---

LEXIS 137234, at *2 (S.D. Ga. Dec. 29, 2010). No discovery is necessary to rule on Defendants' well founded dispositive motions in the present case.

[2] And as Plaintiff's TCPA counsel is surely aware, unavailable call records is a routine issue in TCPA cases, as FCC rules only require carriers to maintain toll call records for 18 months. 47 CFR § 42.6. Sampling, extrapolations, and secondary, non-carrier sources of that information is routinely used to fill in gaps in such cases. In all events, subjecting Matrix and Valiant to burdensome discovery will not fix *that* issue. The carriers have what they have, and Plaintiff should issue whatever subpoenas he deems appropriate.

Answer ¶¶ 37, 43-44, 50 (ECF No. 28); Valiant Reply at 3 (ECF No. 37).  Plaintiff is free to pursue discovery as to Kasick, at least with respect to the issue of prior express consent, [3] but his insufficient claims as to Valiant and Matrix should not open the expensive, time-consuming doors of discovery until the Court has an opportunity to rule on their respective Motions to Dismiss.  As the Supreme Court has clearly held, "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Plaintiff's Complaint improperly attempts to invoke this Court's exercise of personal jurisdiction over Matrix where it is lacking, and improperly attempts to subject the parties to expensive, burdensome discovery "with nothing more than conclusions."  The Court's gate-keeping function is needed here before Plaintiff's defective pleading causes Matrix and Valiant any further unjustified burden.

## IV.    CONCLUSION

Because it is within the Court's broad discretion to stay discovery pending resolution of preliminary motions that may dispose of the entire cause of action against one or more defendants, and because Matrix and Valiant have filed such dispositive motions, Defendants Matrix and Valiant respectfully request that the Court enter an order staying discovery as to them until the Court has ruled on their Motions to Dismiss.

---

[3]  As all Defendants agree, in the event the Court denies this motion, in all events the Court should stage discovery so that the narrow, dispositive question of prior express consent is resolved first. *Nicholson v. REI Energy, Ltd. Liab. Co*., 370 F. Supp. 3d 1199, 1204 (D. Or. 2019) (reciting Court's grant of defendant's motion bifurcating discovery in TCPA case to "the narrow issue of whether the equipment constituted an ATDS could be dispositive of Plaintiff's claim," which issue is typically far more involved than the threshold question of consent); *America's Health & Res. Ctr., Ltd. v. Promologics, Inc*., No. 16 C 9281, 2018 U.S. Dist. LEXIS 120590, at *16 (N.D. Ill. July 19, 2018) (bifurcating discovery in TCPA case where "some limited, first-stage production could stave off substantial wasted efforts").

Dated: December 5, 2019

Respectfully Submitted,

BERMAN FINK VAN HORN P.C.

/s/_Benjamin I. Fink_____

BENJAMIN I. FINK
Georgia Bar No. 261090
MALONE W. ALLEN
Georgia Bar No. 921070
3475 Piedmont Road, N.E., Suite 1100
Atlanta, GA 30305
T: 404-261-7588
F: 404-233-1943
bfink@bfvlaw.com
mallen@bfvlaw.com

and

Joseph P. Bowser, *Pro Hac Vice*
Roth Jackson Gibbons Condlin, PLC
1519 Summit Avenue, Suite 102
Richmond, VA 23230
T: 804-441-8701
F: 804-441-8438
jbowser@rothjackson.com

and

Genevieve C. Bradley, *Pro Hac Vice*
Roth Jackson Gibbons Condlin, PLC
8200 Greensboro Drive, Suite 820
McLean, VA 22102
T: 703-485-3531
F: 703-485-3525
gbradley@rothjackson.com

*Counsel for Defendants Matrix Warranty Solutions, Inc. and Valiant Automotive LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2019, the foregoing Reply in Support of Their Motion to Stay was filed through the Court's electronic filing system and will be sent electronically to the parties via the Court's electronic filing system.

Anthony I. Paronich, *Pro Hac Vice*
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
T: (617) 738-7080
anthony@paronichlaw.com

and

Andrew W. Heidarpour, *Pro Hac Vice*
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Avenue NW, Suite #190-318
Washington, DC 20004
T: (202) 234-2727
aheidarpour@hlfirm.com

and

Steven H. Koval
3575 Piedmont Road
Building 15, Suite 120
Atlanta, GA 30305
T: (404) 513-6651
shkoval@aol.com

*Counsel for Plaintiff*

and

James J. Leonard
Adam Gajadharsingh
BARNES & THORNBURG LLP
3475 Piedmont Road N.E., Suite 1700
Atlanta, GA 30305
T: (404) 846-1693
jimleonard@btlaw.com
adam.gajadharsingh@btlaw.com

and

David P. Reiner, *Pro Hac Vice*
Reiner & Reiner, P.A.
One Datran Center
9100 South Dadeland Blvd., Suite 901
Miami, FL 33156
T: (305) 670-8282
dpr@reinerslaw.com

*Counsel for Defendant Michael Kasick*

/s/ *Malone W. Allen*_____
MALONE W. ALLEN

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

GENE THROWER, individually and on behalf of others similarly situated,

      Plaintiff,

v.

MATRIX WARRANTY SOLUTIONS, INC. d/b/a ELEMENT PROTECTION, VALIANT AUTO LLC d/b/a AUTOMOTIVE SERVICES CENTER, and MICHAEL KASICK

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION FILE NO. 3:19-cv-00066-CAR

_____/

## FIRST SET OF DISCOVERY TO MATRIX WARRANTY SOLUTIONS, INC.

Pursuant Federal Rules of Civil Procedure ("Rules") 26, 33 and 34, Plaintiff's First Set of Discovery to Matrix Warranty Solutions, Inc. is hereby propounded to you and your attorneys of record. This discovery is intended to draw upon the combined knowledge of you, your agents and your attorneys.

## INSTRUCTIONS FOR INTERROGATORIES

1.      Pursuant to Rule 33, submit your answers to the interrogatories herein in writing and under oath to the undersigned counsel within 30 days of the date of service on you. If any of these interrogatories cannot be answered in full, then you should answer to the fullest extent possible, specifying the reasons for your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion or portions. In answering these interrogatories, furnish such information as is available to you, regardless of whether this information is obtained directly by you, through your agents or representatives or by any of your

attorneys.  For each interrogatory, please identify all persons who provided information used in answering it.

2.      These interrogatories are continuing in nature.  In accordance with Rule 26, you are required to supplement your answers to the interrogatories when new or additional information becomes known to you.

## INSTRUCTIONS FOR REQUESTS FOR PRODUCTION

3.      Pursuant to Rule 34(b)(2)(B), on the date production is due, Defendant shall produce all the responsive documents or specify a reasonable date certain on which they will be produced.

4.      In accordance with Rule 34(b), you shall provide written responses to the following requests and shall produce the requested documents as they are kept in the ordinary and usual course of business or shall organize and label the documents to correspond with the categories in this request.

5.      Defendant is required to produce all the requested documents that are in its possession, custody or control.

6.      All requests for computerized data are to be produced in a computer-readable format. Fidelity, quality, color, resolution and metadata should not be degraded, destroyed or lost. If any SQL scripts or other queries are executed to export the information for production, disclose the code executed. If you believe that any transformation of ESI is required before production—for instance, if you believe that certain ESI must be reduced to a screenshot before production—please meet and confer with us right away.

7.      A draft and a final version are two distinct documents.

8.      If Defendant withholds the production of any responsive document on the grounds that the document is privileged or otherwise protected, Defendant shall state in a privilege log the nature of the claim of privilege or protection; the type and nature of the document; the date of the

document; the author(s), the addressee(s), and recipient(s) of the document; the document's present location; and any other information that will enable Plaintiff and the Court to assess the applicability of the privilege or protection.

9.      If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production in its original condition, state the following information:

        a.   whether it has been altered, tampered with, edited, manipulated, destroyed and/or deleted;

        b.   if so, how, why, when, where and by whom; and

        c.   what remedial measures, if any, have been taken to prevent similar occurrences in the future.

10.     These requests shall be deemed continuing so as to require seasonable supplemental responses as Defendant or its attorneys obtain further information or materials from the time its answers are served through trial.

## DEFINITIONS

The following terms shall have the following meanings, even when not capitalized or bolded:

11.     "**Defendant**" means the defendant named in this lawsuit who is being served with these requests and includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives.

12.     "**Describe**" means to identify and explain fully the characteristics, nature and substance of a given thing, action, communication or event, to set forth all details, physical

properties and dimensions of a physical thing inquired about, and to specify all pertinent dates, locations, causes, purposes, effects and results of the thing, action, communication or event inquired about.

13.    "**Document**" means any writing as defined in Rule 34(a)(1)(A), however produced, reproduced, archived or stored, within your possession or subject to your control, of which you have knowledge or to which you now have or previously had access, including all ESI.

14.    "**Identify**" (when used in reference to a document) means to state the date of preparation of the document, its author, the sender (if any), the recipient (if any), the nature of the document (e.g., letter, memorandum or tape) and other means of identification sufficient to specify the document for purposes of a request for production, and to further state its present location and custodian. If any such document was, but no longer is, in your possession or custody or subject to your control, describe what disposition was made of it and give the name, address and telephone number of the person presently having possession, custody or control of the document.

15.    "**Identify**" (when used in reference to an natural person) means to state that person's full name, title, business address, telephone number, email address, occupation and employer, along with a statement of whether that person is represented by your counsel in this litigation.

16.    "**Identify**" (when used in reference to an entity) means to state the entity's full name, address, telephone number, state of incorporation or organization and web address. Unless it otherwise appears from the context, a request for the identity of a person relates to all persons in the relevant classification or category, and the request for the identity of an entity includes all affiliated entities.

17.    "**Electronically stored information**" or "**ESI**" means any electronic document and includes, without limitation, the following:

a.    Activity listings of email receipts and/or transmittals;

4

b.      Output resulting from the use of any software program (whether such program is hosted locally, on a dedicated server, in the cloud, or otherwise), including without limitation word processing documents (such as Google Docs or Microsoft Word), notes (such as Apple Notes or Evernote), task lists (such as Asana or Trello), calendar entries, slideshows (such as PowerPoint or Keynote), spreadsheets, database files, charts, graphs, outlines, email, SMS, MMS, social media (including, but not limited to, Facebook, LinkedIn, Twitter and Snapchat), instant messaging (including, but not limited to, Google Hangouts, Slack and Yammer), voicemails, bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether such electronic data exist in an active file, archived file, deleted file or file fragment; and

c.      Any and all items stored on computer memories, hard disks, network servers, individual computer workstations or clients, thumb drives, jump drives, CDs, DVDs, cloud servers, floppy disks, CD-ROMs, magnetic tape, microfiche or any other vehicle for digital data storage and/or transmittal, including without limitation a personal digital assistant, smartphone and/or tablet (e.g., iPhone, Droid, Blackberry, Galaxy, HTC, iPad, iPod, Kindle, Nook or other device). To minimize redundant work for all parties, Plaintiff requests that ESI be processed and produced in a manner that preserves all metadata and that the parties confer regarding the production of metadata and the form of any electronic production before the gathering or processing of ESI.

In each instance (a) through (c) above, information is ESI regardless of whether or not it is ostensibly (1) professional or personal; (2) local, remote or cloud-based; (3) archival or not; (4) in English, Spanish or another language.

18.      "**Or**" means and/or.

19.      "**Person**" means any natural person or legal entity, including, without limitation, any business or governmental entity or association.

20.     "**Plaintiff**" means the Plaintiff in this lawsuit.

21.     "**Policy**" means any instruction, practice, procedure, directive, routine, guideline, rule, course of conduct or code of conduct that was or has been recognized, adopted, issued or followed by you—regardless of whether written or unwritten, formal or informal, recorded or unrecorded.

22.     "**TCPA**" means the Telephone Consumer Protection Act, 47 U.S.C. § 227.

23.     "**Telemarketing**" means a call, SMS, MMS, fax or other telecommunication that could have generated or was intended to generate leads, customers or sales for you within the United States. A communication is telemarketing even though it (1) had other, additional purposes (e.g., fulfillment of a partially completed transaction or verification of information); (2) was to a person who had consented to receive it; (3) was to a person who had a prior existing business relationship with you; (4) was not made by you; and/or (5) was not made for your exclusive or direct benefit.

24.     "**Third party**" means any natural person, partnership, association, corporation, joint venture, or other business or legal entity not owned or controlled by you.

25.     "**Vendor**" means any third party under contract with, hired by, employed by, paid by or working for you, directly or indirectly, for purposes of telemarketing or phone-based activities or services, including, but not limited to, generating leads, warm transfers, hot transfers or any other call transfers, making outbound telemarketing calls, or tracking or aggregating data related to any of those activities, including, but not limited to, any co-defendant.

26.     "**You**" means the entity to which these requests are propounded and includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives.

27.     All other words shall have their ordinary definition as defined by Merriam-Webster's online dictionary, located at http://www.merriam-webster.com/.

## RELEVANT TIME PERIOD

Unless otherwise indicated, these requests shall pertain to the time period starting four years before the filing of the original complaint in this case and continuing through the present and shall include all documents and information that relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received outside of that period.

## INTERROGATORIES

1.     Identify each and every person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

**ANSWER:**


2.     Identify and describe the work of Valiant Auto LLC.

**ANSWER**:


3.     Identify all third parties or sub-vendors used by Valiant Auto LLC in the course of telemarketing.

**ANSWER:**


4.     Identify by make, model, structure and location the system(s), platform(s), and/or equipment used by you, or any vendor, to place telemarketing calls to Mr. Thrower.

**ANSWER:**

5.      Identify each of the individuals that spoke with Mr. Thrower from your company or any of their vendors during or regarding the telemarketing calls.

**ANSWER**:

6.      If you contend that Plaintiff provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained.

**ANSWER:**

7.      Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for engaging in, facilitating, or allowing allegedly unlawful or unauthorized telemarketing to occur. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.

**ANSWER**:

8.      State all facts in support of any affirmative defenses you have raised.

**ANSWER**:

9.      In response to which (if any) requests for production in this case have you produced no responsive documents?

**ANSWER:**

10.     How many new customers have you received from Valiant Auto LLC.

**ANSWER:**

## DOCUMENT REQUESTS

1.     Please produce all non-attorney-client-privileged documents identified in or used to research or draft responses to interrogatories in this case.

**RESPONSE:**

2.     Please produce all documents supporting or contradicting any affirmative defense made in any answer by you to any complaint in this case.

**RESPONSE:**

3.     Please produce all documents related to Plaintiff, including, but not limited to, all documents evidencing your relationship with Plaintiff or your investigation into telemarketing calls made to Plaintiff.

**RESPONSE:**

4.     Please produce all documents relating to telemarketing training provided to your employees or vendors.

**RESPONSE:**

5.     Please produce all documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force. This request specifically includes, but is not limited to, policies related to the following:

      a.        the frequency with which calls are placed to the same number;

      b.        scripts;

      c.        reasons triggering the addition of a person's name or telephone number to the list of those receiving calls;

      d.        when and how calls would be placed (e.g., the vendor, equipment, computer system, or other program, etc.);

      e.        compliance with the TCPA, including, but not limited to the rules, regulations, opinions, advisories, comments or filings of the Federal Communications Commission that relate to the TCPA or 47 C.F.R. § 64.1200;

      f.        obtaining or verifying prior express consent;

      g.        determining whether a person has revoked consent and/or opted out from receiving calls from;

      h.        placing automated calls to persons who have revoked consent and/or opted out; or

      i.        complying with E-SIGN Act, 15 U.S.C. §§ 7001 *et seq.*

**RESPONSE:**


6.      Please produce your do-not-call policy.

**RESPONSE:**


7.      Please produce all documents relating to the number of customers or amount of revenue acquired by you from telemarketing.

**RESPONSE:**


8.      Please produce all data dictionaries or keys to data tables for:

a.      each system, platform, and/or equipment used by you, or any vendor, to send

telemarketing, or to store data about telemarketing; and

b.      each database, list, system, platform, and/or equipment used by you, or any vendor,

to store data about a person's purported consent to receiving telemarketing.

**RESPONSE:**

9.      Please produce all documents relating to your failure, alleged failure, or possible

failure by you, or any vendor, to comply with your policies related to telemarketing.

**RESPONSE:**


10.     Please produce all documents relating to the failure, alleged failure, or possible

failure of your vendors to comply with any agreements, contracts, statements of work, policies or

other instruction(s) related to telemarketing or lead generation.

**RESPONSE:**


11.     Please produce all documents relating to complaints or do-not-call requests

concerning telemarketing, including, but not limited to, lists or databases containing complaints and

metadata about them, and information identifying the complainants. This request includes any

complaints to you by mail, email, live call, IVR, SMS, web form, social media, FCC, FTC, CFPB,

state attorney general, BBB or any other source.

**RESPONSE:**


12.     Please produce all documents constituting or relating to audits, investigations,

inquiries, or studies, by you or any third party including, but not limited to, any independent

auditor, law firm, or governmental agency, regarding the compliance by you, or any third party or vendor acting on your behalf, with the TCPA or any other state or federal laws or regulations regulating telemarketing. This request is not limited to audits, investigations, inquiries and studies commissioned or directed by you.

**RESPONSE:**

13.     Please produce all documents necessary to identify all TCPA lawsuits filed against you.

**RESPONSE:**

14.     Please produce all documents relating to training provided to Valiant Auto LLC.

**RESPONSE:**

15.     All contracts or documents representing agreements regarding Valiant Auto LLC.

**RESPONSE:**

16.     All communications with Valiant Auto LLC regarding telemarketing or customer acquisition.

**RESPONSE:**

17.     All internal communications at your company regarding Valiant Auto LLC.

**RESPONSE:**

18.     Please produce all documents relating to insurance coverage of the acts alleged by Plaintiff, including, but not limited to, all potentially applicable policies issued by any insurer and all communications with any such insurers, including, but not limited to, reservation-of-rights letters, regardless of whether or not such coverage purports to exclude the acts alleged in this matter and regardless of whether or not such insurers have declined coverage in this matter.

**RESPONSE:**


19.     Please produce all indemnification agreements under which a third party may be responsible for satisfying all or part of a judgment that may be entered against you in this action, and all communications with those third parties.

**RESPONSE:**


20.     Please produce all letters, emails, voicemails, text messages, instant messages, social media messages and other communications between you and any vendor concerning automated and/or telemarketing calls.

**RESPONSE:**


21.     Please produce all documents relating to the number of customers or amount of revenue acquired by you from Valiant Auto LLC.

**RESPONSE:**


Dated: November 26, 2019

PLAINTIFF,
By his attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich

13

Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2019, I electronically served the foregoing on counsel

of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| GENE THROWER, individually and on behalf of others similarly situated, | : : : | CIVIL ACTION FILE NO. 3:19-cv-00066-CAR |
| Plaintiff, | : : | |
| v. | : : : | |
| MATRIX WARRANTY SOLUTIONS, INC. d/b/a ELEMENT PROTECTION, VALIANT AUTO LLC d/b/a AUTOMOTIVE SERVICES CENTER, and MICHAEL KASICK | : : : : : : | |
| Defendants. | : : | |

_____/

**FIRST SET OF DISCOVERY TO VALIANT AUTO LLC**

Pursuant Federal Rules of Civil Procedure ("Rules") 26, 33 and 34, Plaintiff's First Set of Discovery to Valiant Auto LLC is hereby propounded to you and your attorneys of record. This discovery is intended to draw upon the combined knowledge of you, your agents and your attorneys.

**INSTRUCTIONS FOR INTERROGATORIES**

1.      Pursuant to Rule 33, submit your answers to the interrogatories herein in writing and under oath to the undersigned counsel within 30 days of the date of service on you. If any of these interrogatories cannot be answered in full, then you should answer to the fullest extent possible, specifying the reasons for your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion or portions. In answering these interrogatories, furnish such information as is available to you, regardless of whether this information is obtained directly by you, through your agents or representatives or by any of your

attorneys.  For each interrogatory, please identify all persons who provided information used in answering it.

2.      These interrogatories are continuing in nature.  In accordance with Rule 26, you are required to supplement your answers to the interrogatories when new or additional information becomes known to you.

## INSTRUCTIONS FOR REQUESTS FOR PRODUCTION

3.      Pursuant to Rule 34(b)(2)(B), on the date production is due, Defendant shall produce all the responsive documents or specify a reasonable date certain on which they will be produced.

4.      In accordance with Rule 34(b), you shall provide written responses to the following requests and shall produce the requested documents as they are kept in the ordinary and usual course of business or shall organize and label the documents to correspond with the categories in this request.

5.      Defendant is required to produce all the requested documents that are in its possession, custody or control.

6.      All requests for computerized data are to be produced in a computer-readable format. Fidelity, quality, color, resolution and metadata should not be degraded, destroyed or lost. If any SQL scripts or other queries are executed to export the information for production, disclose the code executed. If you believe that any transformation of ESI is required before production—for instance, if you believe that certain ESI must be reduced to a screenshot before production—please meet and confer with us right away.

7.      A draft and a final version are two distinct documents.

8.      If Defendant withholds the production of any responsive document on the grounds that the document is privileged or otherwise protected, Defendant shall state in a privilege log the nature of the claim of privilege or protection; the type and nature of the document; the date of the

document; the author(s), the addressee(s), and recipient(s) of the document; the document's present location; and any other information that will enable Plaintiff and the Court to assess the applicability of the privilege or protection.

9.      If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production in its original condition, state the following information:

   a.   whether it has been altered, tampered with, edited, manipulated, destroyed and/or deleted;

   b.   if so, how, why, when, where and by whom; and

   c.   what remedial measures, if any, have been taken to prevent similar occurrences in the future.

10.     These requests shall be deemed continuing so as to require seasonable supplemental responses as Defendant or its attorneys obtain further information or materials from the time its answers are served through trial.

## DEFINITIONS

The following terms shall have the following meanings, even when not capitalized or bolded:

11.     "**Defendant**" means the defendant named in this lawsuit who is being served with these requests and includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives.

12.     "**Describe**" means to identify and explain fully the characteristics, nature and substance of a given thing, action, communication or event, to set forth all details, physical

properties and dimensions of a physical thing inquired about, and to specify all pertinent dates, locations, causes, purposes, effects and results of the thing, action, communication or event inquired about.

13.      "**Document**" means any writing as defined in Rule 34(a)(1)(A), however produced, reproduced, archived or stored, within your possession or subject to your control, of which you have knowledge or to which you now have or previously had access, including all ESI.

14.      "**Identify**" (when used in reference to a document) means to state the date of preparation of the document, its author, the sender (if any), the recipient (if any), the nature of the document (e.g., letter, memorandum or tape) and other means of identification sufficient to specify the document for purposes of a request for production, and to further state its present location and custodian. If any such document was, but no longer is, in your possession or custody or subject to your control, describe what disposition was made of it and give the name, address and telephone number of the person presently having possession, custody or control of the document.

15.      "**Identify**" (when used in reference to an natural person) means to state that person's full name, title, business address, telephone number, email address, occupation and employer, along with a statement of whether that person is represented by your counsel in this litigation.

16.      "**Identify**" (when used in reference to an entity) means to state the entity's full name, address, telephone number, state of incorporation or organization and web address. Unless it otherwise appears from the context, a request for the identity of a person relates to all persons in the relevant classification or category, and the request for the identity of an entity includes all affiliated entities.

17.      "**Electronically stored information**" or "**ESI**" means any electronic document and includes, without limitation, the following:

a.      Activity listings of email receipts and/or transmittals;

4

b.     Output resulting from the use of any software program (whether such program is hosted locally, on a dedicated server, in the cloud, or otherwise), including without limitation word processing documents (such as Google Docs or Microsoft Word), notes (such as Apple Notes or Evernote), task lists (such as Asana or Trello), calendar entries, slideshows (such as PowerPoint or Keynote), spreadsheets, database files, charts, graphs, outlines, email, SMS, MMS, social media (including, but not limited to, Facebook, LinkedIn, Twitter and Snapchat), instant messaging (including, but not limited to, Google Hangouts, Slack and Yammer), voicemails, bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether such electronic data exist in an active file, archived file, deleted file or file fragment; and

c.     Any and all items stored on computer memories, hard disks, network servers, individual computer workstations or clients, thumb drives, jump drives, CDs, DVDs, cloud servers, floppy disks, CD-ROMs, magnetic tape, microfiche or any other vehicle for digital data storage and/or transmittal, including without limitation a personal digital assistant, smartphone and/or tablet (e.g., iPhone, Droid, Blackberry, Galaxy, HTC, iPad, iPod, Kindle, Nook or other device). To minimize redundant work for all parties, Plaintiff requests that ESI be processed and produced in a manner that preserves all metadata and that the parties confer regarding the production of metadata and the form of any electronic production before the gathering or processing of ESI.

In each instance (a) through (c) above, information is ESI regardless of whether or not it is ostensibly (1) professional or personal; (2) local, remote or cloud-based; (3) archival or not; (4) in English, Spanish or another language.

18.     "**Or**" means and/or.

19.     "**Person**" means any natural person or legal entity, including, without limitation, any business or governmental entity or association.

20.     "**Plaintiff**" means the Plaintiff in this lawsuit.

21.     "**Policy**" means any instruction, practice, procedure, directive, routine, guideline, rule, course of conduct or code of conduct that was or has been recognized, adopted, issued or followed by you—regardless of whether written or unwritten, formal or informal, recorded or unrecorded.

22.     "**TCPA**" means the Telephone Consumer Protection Act, 47 U.S.C. § 227.

23.     "**Telemarketing**" means a call, SMS, MMS, fax or other telecommunication that could have generated or was intended to generate leads, customers or sales for you within the United States. A communication is telemarketing even though it (1) had other, additional purposes (e.g., fulfillment of a partially completed transaction or verification of information); (2) was to a person who had consented to receive it; (3) was to a person who had a prior existing business relationship with you; (4) was not made by you; and/or (5) was not made for your exclusive or direct benefit.

24.     "**Third party**" means any natural person, partnership, association, corporation, joint venture, or other business or legal entity not owned or controlled by you.

25.     "**Vendor**" means any third party under contract with, hired by, employed by, paid by or working for you, directly or indirectly, for purposes of telemarketing or phone-based activities or services, including, but not limited to, generating leads, warm transfers, hot transfers or any other call transfers, making outbound telemarketing calls, or tracking or aggregating data related to any of those activities, including, but not limited to, any co-defendant.

26.     "**You**" means the entity to which these requests are propounded and includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives.

6

27.     All other words shall have their ordinary definition as defined by Merriam-Webster's online dictionary, located at http://www.merriam-webster.com/.

## RELEVANT TIME PERIOD

Unless otherwise indicated, these requests shall pertain to the time period starting four years before the filing of the original complaint in this case and continuing through the present and shall include all documents and information that relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received outside of that period.

## INTERROGATORIES

1.     Identify each and every person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

**ANSWER:**


2.     Identify and describe the work of Michael Kasick, and any calling center that he worked for, provided to you.

**ANSWER**:


3.     Identify all third parties or sub-vendors used by Michael Kasick, and any calling center that he worked for.

**ANSWER:**


4.     Identify by make, model, structure and location the system(s), platform(s), and/or equipment used by you, or any vendor, to place telemarketing calls to Mr. Thrower.

7

**ANSWER:**

5.      Identify each of the individuals that spoke with Mr. Thrower from your company or any of their vendors during or regarding the telemarketing calls.

**ANSWER**:

6.      If you contend that Plaintiff provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained.

**ANSWER:**

7.      Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for engaging in, facilitating, or allowing allegedly unlawful or unauthorized telemarketing to occur. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.

**ANSWER**:

8.      State all facts in support of any affirmative defenses you have raised.

**ANSWER**:

9.      In response to which (if any) requests for production in this case have you produced no responsive documents?

**ANSWER:**

10.    How many new customers or leads have you received from Michael Kasick, and any calling center that he worked for.

**ANSWER:**

11.    How many new customers or leads have you provided to Matrix Warranty.

**ANSWER:**

**DOCUMENT REQUESTS**

1.    Please produce all non-attorney-client-privileged documents identified in or used to research or draft responses to interrogatories in this case.

**RESPONSE:**

2.    Please produce all documents supporting or contradicting any affirmative defense made in any answer by you to any complaint in this case.

**RESPONSE:**

3.    Please produce all documents related to Plaintiff, including, but not limited to, all documents evidencing your relationship with Plaintiff or your investigation into telemarketing calls made to Plaintiff.

**RESPONSE:**

4.    Please produce all documents relating to telemarketing training provided to your employees or vendors.

**RESPONSE:**


5.      Please produce all documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force. This request specifically includes, but is not limited to, policies related to the following:

a.      the frequency with which calls are placed to the same number;

b.      scripts;

c.      reasons triggering the addition of a person's name or telephone number to the list of those receiving calls;

d.      when and how calls would be placed (e.g., the vendor, equipment, computer system, or other program, etc.);

e.      compliance with the TCPA, including, but not limited to the rules, regulations, opinions, advisories, comments or filings of the Federal Communications Commission that relate to the TCPA or 47 C.F.R. § 64.1200;

f.      obtaining or verifying prior express consent;

g.      determining whether a person has revoked consent and/or opted out from receiving calls from;

h.      placing automated calls to persons who have revoked consent and/or opted out; or

i.      complying with E-SIGN Act, 15 U.S.C. §§ 7001 *et seq.*

**RESPONSE:**


6.       Please produce your do-not-call policy.

**RESPONSE:**

7.      Please produce all documents relating to the number of customers or amount of revenue acquired by you from telemarketing.

**RESPONSE:**

8.      Please produce all data dictionaries or keys to data tables for:

a.      each system, platform, and/or equipment used by you, or any vendor, to send telemarketing, or to store data about telemarketing; and

b.      each database, list, system, platform, and/or equipment used by you, or any vendor, to store data about a person's purported consent to receiving telemarketing.

**RESPONSE:**

9.      Please produce all documents relating to your failure, alleged failure, or possible failure by you, or any vendor, to comply with your policies related to telemarketing.

**RESPONSE:**

10.      Please produce all documents relating to the failure, alleged failure, or possible failure of your vendors to comply with any agreements, contracts, statements of work, policies or other instruction(s) related to telemarketing or lead generation.

**RESPONSE:**

11.      Please produce all documents relating to complaints or do-not-call requests concerning telemarketing, including, but not limited to, lists or databases containing complaints and metadata about them, and information identifying the complainants. This request includes any

complaints to you by mail, email, live call, IVR, SMS, web form, social media, FCC, FTC, CFPB, state attorney general, BBB or any other source.

**RESPONSE:**

12.     Please produce all documents constituting or relating to audits, investigations, inquiries, or studies, by you or any third party including, but not limited to, any independent auditor, law firm, or governmental agency, regarding the compliance by you, or any third party or vendor acting on your behalf, with the TCPA or any other state or federal laws or regulations regulating telemarketing. This request is not limited to audits, investigations, inquiries and studies commissioned or directed by you.

**RESPONSE:**

13.     Please produce all documents necessary to identify all TCPA lawsuits filed against you.

**RESPONSE:**

14.     Please produce all documents relating to training provided to Michael Kasick or any calling center that he worked for.

**RESPONSE:**

15.     Please produce all documents relating to training provided from Matrix Warranty regarding telemarketing.

**RESPONSE:**

16.     All contracts or documents representing agreements regarding Michael Kasick, and any calling center that he worked for.

**RESPONSE:**


17.     All contracts or documents representing agreements regarding Matrix Warranty.

**RESPONSE:**


18.     All communications with Michael Kasick, or any calling center that he worked for, regarding telemarketing or customer acquisition.

**RESPONSE:**


19.     All communications with Matrix Warranty regarding telemarketing or customer acquisition.

**RESPONSE:**


20.     All internal communications at your company regarding Michael Kasick, or any calling center that he worked for.

**RESPONSE:**


21.     All internal communications at your company regarding Matrix Warranty.

**RESPONSE:**


22.     Please produce all documents relating to insurance coverage of the acts alleged by Plaintiff, including, but not limited to, all potentially applicable policies issued by any insurer and

all communications with any such insurers, including, but not limited to, reservation-of-rights letters, regardless of whether or not such coverage purports to exclude the acts alleged in this matter and regardless of whether or not such insurers have declined coverage in this matter.

**RESPONSE:**

23.     Please produce all indemnification agreements under which a third party may be responsible for satisfying all or part of a judgment that may be entered against you in this action, and all communications with those third parties.

**RESPONSE:**

24.     Please produce all letters, emails, voicemails, text messages, instant messages, social media messages and other communications between you and any vendor concerning automated and/or telemarketing calls.

**RESPONSE:**

25.     Please produce all documents relating to the number of customers or leads acquired by you from Michael Kasick, or any calling center that he worked for.

**RESPONSE:**

26.     Please produce all documents relating to the number of customers provided to Matrix Warranty by you.

**RESPONSE:**

Dated: November 26, 2019

PLAINTIFF,
By his attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2019, I electronically served the foregoing on counsel of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich